UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DANIEL J. B.,

                    Plaintiff,

        v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

Case No. 3:25-cv-00262-YY

OPINION AND ORDER

_____

YOU, Magistrate Judge.

Plaintiff Daniel J. B. seeks judicial review of the Commissioner's final decision denying Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. Plaintiff asserts the Administrative Law Judge erred in assessing medical opinion evidence, discounting his subjective symptom testimony, and rejecting lay witness testimony. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is reversed and remanded for further proceedings.

## I.        Medical Opinion Evidence

### A.        Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

Page 2 – OPINION AND ORDER

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

### A.    Fayza Sohail, M.D.

The ALJ concluded Dr. Sohail's opinions were "not persuasive because they are too vague and non-specific for Social Security's determinations as Dr. Sohail does not specify the claimant's maximum ability to perform work-related activities in policy-compliant language." Tr.

Page 3 – OPINION AND ORDER

1431. The ALJ further stated that, "[a]lthough some of these opinions are not necessarily inconsistent with the medical evidence or . . . the residual functional capacity assessment, they cannot be found persuasive where they do not provide clear opinions regarding the claimant's functional limitations in policy-compliant language." *Id.*

Plaintiff argues the ALJ did not explain which "policy" Dr. Sohail failed to comply with, and claims "it is part of the ALJ's job to translate the functional restrictions provided by the medical sources into concrete, vocationally relevant limitations which can be presented to a vocational expert to determine their impact on the ability to sustain work activity or ultimately included in the RFC." Pl. Br. 7. As an example, plaintiff observes "Dr. Sohail assessed a need to change positions, which the ALJ could easily have presented to the VE to determine its impact on the ability to perform work activity." *Id.* Plaintiff also faults the ALJ for not "address[ing] the supportability factor at all." *Id.*

"A medical opinion is a 'statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations' as it pertains to an individual's ability to work." *Bryan Y. v. Comm'r, Soc. Sec. Admin.*, No. 1:23-CV-00319-HZ, 2024 WL 1508559, at *7 (D. Or. Apr. 7, 2024) (quoting 20 C.F.R. § 416.913(a)(2)). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Dena P. v. Comm'r of Soc. Sec.*, No. 3:19-cv-5929-DWC, 2020 WL 1934129, at *2 (W.D.Wash. Apr. 22, 2020) (citing *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015)).

"A finding that a physician's opinion is too vague to be useful in making a disability determination can serve as a specific and legitimate reason for discounting that opinion." *Dena*

*P.*, 2020 WL 1934129 at \*2. "[F]indings related to the vagueness of [an] opinion relate to the supportability of the medical opinion[.]" *Cruz v. Kijakazi*, Case No. 1:21-cv-1248 JLT HBK, 2023 WL 4074773, at \*4 (E.D. Cal. June 20, 2023). "An ALJ, in finding an opinion non-persuasive based on vagueness, necessarily discusses supportability because that factor is aimed at the adequacy of a medical source's explanation for their opinion." *Kathryn A. C. v. Kijakazi*, No. 1:23-CV-00002-DCN-REP, 2023 WL 11003115, at \*6 (D. Idaho Aug. 16, 2023), *report and recommendation adopted,* No. 123CV00002DCNREP, 2024 WL 1298363 (D. Idaho Mar. 26, 2024) (citing *Roxane D. v. Kijakazi*, Case No. 21-cv-2656 (JRT/DTS), 2023 WL 2838121, at \*3 (D. Minn. Feb. 13, 2023)). "In other words, a vague opinion is not supported by a sufficient explanation, and therefore, may be less persuasive." *Id.* (citing *Cruz*, 2023 WL 4074773 at \* 4).

In certain circumstances, courts have found that medical opinions were too vague to be useful in specifying a claimant's functional limits. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (holding the doctor's descriptions of the claimant's ability to perform in the workplace as "limited" or "fair" were not useful because they failed to specify the claimant's functional limits); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding statement that the plaintiff would have "decreased concentration skills" was too vague to be useful in the disability determination); *Kevin D. M. v. Comm'r of Soc. Sec.*, No. 2:20-CV-985-DWC, 2021 WL 12173232, at \*2 (W.D. Wash. June 21, 2021) (holding the ALJ properly found the lack of clear definitions for terms such as the plaintiff had "problems" with reasoning, his memory "seem[ed] poor," his concentration and persistence was "a serious problem," and his social and adaptive skills were "poor" rendered the doctor's opinions about the plaintiff abilities unhelpful to the RFC determination); *Julie C. v. Comm'r of Soc. Sec.*, No. 3:24-CV-05849-TLF, 2025 WL

Page 5 – OPINION AND ORDER

4663072, at *7 (W.D. Wash. May 28, 2025) (finding the medical provider's opinion that pain limits the plaintiff's functional abilities and makes it difficult for the plaintiff to stand and walk for long periods of time was vague and did not provide a specific functional limitation for the ALJ to potentially incorporate into the RFC determination); *Ronald F. v. Comm'r of Soc. Sec.*, No. C19-6188 RSM, 2020 WL 4671196, at *3 (W.D. Wash. Aug. 12, 2020) (finding the ALJ reasonably concluded the doctor's opinions were vague where her only statements regarding functioning was that the plaintiff "may" be able to interact with others and the rest of her statements merely summarized the plaintiff's exam performance and did not set forth functional work restrictions); *Samuel P. v. Comm'r of Soc. Sec.*, No. 20-5881, 2021 WL 5769404, at *6 (W.D. Wash. Dec. 6, 2021) (finding the doctor's descriptions of the claimant's ability to perform in the workplace as "limited" or "fair" were not useful because they failed to specify the claimant's functional limits); *Holly B. v. Comm'r of Soc. Sec.*, No. 2:19-CV-01782-TLF, 2020 WL 13922934, at *3 (W.D. Wash. Dec. 30, 2020) (finding statement that the plaintiff's symptoms "could" interfere with her ability to work was "not a definite statement of what, if any, limitations would exist on Plaintiff's functioning in a work environment"); *Darleen A. v. Comm'r of Soc. Sec.*, No. 3:19-CV-05184, 2020 WL 5810218, at *3 (W.D. Wash. Sept. 30, 2020) (finding the doctor's statement that the plaintiff's anxiety would "interrupt her ability to complete a workweek" did not indicate how often, or to what extent, her anxiety would interrupt her work).

However, in other contexts, courts have found that a doctor's opinion was sufficiently specific. For example, where a doctor opined that the plaintiff would have "extreme" fatigue-related symptoms due to her primary sclerosing cholangitis, the court found that was sufficiently specific for the ALJ to assess RFC limitations consistent with the doctor's opinion. *Dena P.* 2020

Page 6 – OPINION AND ORDER

WL 1934129 at *2. Also, where appropriate, the ALJ should consider the doctor's opinion in the context of the entire medical record, if the record includes additional information and findings about the plaintiff's functional limitations. *See Guerra v. Berryhill*, 448 F. Supp. 3d 1115, 1123 (D. Nev. 2020).

Here, Dr. Sohail, who had treated plaintiff since 2017, provided two opinions. In November 2023, Dr. Sohail wrote a letter on plaintiff's behalf, describing his diagnosis of ankylosing hyperostosis, treatment history, and symptoms. Tr. 1859-61. Dr. Sohail explained that plaintiff's "complex history of back pain" has "caused debilitation and prevented normal functionality," and "his quality of life and functionality is greatly affected because of the pain." Tr. 1859. Dr. Sohail described plaintiff's treatment with medication and therapy, and explained that plaintiff had "exhausted every option to improve his quality of life but unfortunately has been [un]successful and continues to live in pain which limits his mobility and activity." Tr. 1859-60. Dr. Sohail described that plaintiff's baseline pain "worsens with most any motion," which "has made it very difficult for him to be working," and he "cannot be in certain positions for long periods of time before his new symptoms start to flare up." Tr. 1860-61.

In October 2024, Dr. Sohail prepared a sworn declaration describing plaintiff's diagnosis, treatment, and symptoms in more detail. Tr. 1968. Dr. Sohail explained that plaintiff had a laminectomy in 1997 and a motorcycle accident in 2018. *Id.* He was diagnosed with idiopathic diffuse skeletal hyperostosis, a hardening of the tendons and ligaments running through the thoracic spine, as well as degenerative disc and joint disease at L4-5. *Id.* Dr. Sohail explained that "[m]ultiple clinical findings confirm significant reduction in the thoracic range of motion, positive straight leg raising test findings, positive sacroiliac compression testing, and muscle

Page 7 – OPINION AND ORDER

spasms," and "[o]n examination, [plaintiff] presented with an antalgic gait, and decreased weightbearing on the right lower extremity." Tr. 1969. Several "conservative treatment measures" had been attempted, including opioids, muscle relaxants, injections, and chiropractic care, acupuncture. *Id.* Nevertheless, plaintiff presented with severe diffuse and chronic musculoskeletal pain across his body, "including the occipital region, the spine, the scapular areas, buttocks, legs, neck, chest and shoulders," as well as fatigue, consistent with the objective findings in his chart notes. *Id.* Plaintiff reported "difficulty with lifting, standing, walking, bending and climbing stairs," which was "consistent with the objective findings in the chart, especially considering the multiple diagnoses of lumbar degenerative disc and joint disease, diffuse skeletal hyperostosis, and fibromyalgia." Tr. 1969-70.

Dr. Sohail's opinions were not vague. Unlike the cases cited above, Dr. Sohail did not use vague terminology such as that plaintiff's pain was "limited" or "decreased," or that he generally had "problems." Instead, Dr. Sohail specifically described that plaintiff suffered from debilitating, chronic pain across his body that "worsens with most any motion" and was untreatable, despite that plaintiff had exhausted "every option," including medications (including opioids), injections, chiropractic care, and acupuncture.

And, if that was not enough, Dr. Sohail's treatment notes, as well as other records from her medical office, consistently and further describe the level of plaintiff's pain and how it impaired his functional limitations. In September 2020, plaintiff reported to Dr. Sohail that his pain was "severe," on average "7/10," and he typically could not sleep because of it and it hindered his lifestyle significantly. Tr. 1731, 1733. Notably, he also repeatedly responded 10/10 in response to questions about what number best described how his pain interfered with his

general activity, sleep, and enjoyment of life. Tr. 1733-34. Elsewhere, plaintiff reported "chronic pain all over, including back" and that "after exam he will pay the price and hurt for days after." Tr. 1735. In November 2020, plaintiff followed up with Dr. Sohail for "chronic pain," describing "ongoing pain in his lower back with numbness and tingling mainly down right leg but sometimes . . . down left leg." Tr. 1744. He took oxycodone for pain and explained it "takes the edge off," and he had "some response" with three Percocet at nighttime. *Id.*

In January 2021, plaintiff saw another medical provider who worked in the same office with Dr. Sohail, and described "persistent bilateral shoulder and bilateral elbow pain and widespread body pain." Tr. 1757. For two years, he had woken up to pain, but it had worsened in the past two weeks. *Id.* He was not working due to his pain, and his quality of life was poor because "even moderate exercise cause[d] a flare of pain for the entire day after." *Id.* He took 5 mg of oxycodone, which "help[ed] tone down the pain so it is bearable," but it made him "loopy." *Id.* The following month, plaintiff reported taking 10-15 mg of oxycodone to help him sleep. Tr. 1761. In May 2021, plaintiff described his pain had "gone up over the last couple of years," Tr. 1785, and he was "able to do very little due to his pain." Tr. 1778. He described that some days he can make the bed and cut the grass and some days he could not. *Id.* Even bending down to see what was in the refrigerator, do dishes, or make the bed aggravated his pain. Tr. 1785.

By November 2022, Dr. Sohail's chart notes show plaintiff had discontinued opioids because he "did not like the foggy feeling it caused." Tr. 1818, 1917. Yet he was still "always in pain" and expressed frustration that the pain kept him from doing normal things like mowing the lawn. Tr. 1818. In 2024, plaintiff continued to describe "widespread pain" that had been

Page 9 – OPINION AND ORDER

"difficult to manage over 5 years." Tr. 1888. In sum, Dr. Sohail detailed letter and declaration did not use vague terminology to describe plaintiff's limitations, and a look to plaintiff's records from Dr. Sohail's medical office would have resolved any lingering questions regarding plaintiff's functional limitations.

Dr. Sohail also opined that "[b]ased on the history provided, the objective findings, both radiological and clinical," plaintiff could not frequently lift 10 pounds (up to two thirds of the workday), occasionally lift 20 pounds (up to one third of the workday), or stand and walk 6/8 hours in a workday in a sustained work setting," he was unable to climb ladders, ropes, and scaffolding, and was significantly limited in his ability to kneel, crouch, and crawl. Tr. 1970. Dr. Sohail opined it was "likely that [plaintiff] may experience intermittent flares requiring at least two episodes per month at one day per episode per month to be off work, again because of the waxing and waning nature of his chronic pain." *Id.*

The ALJ found these opinions were not persuasive because Dr. Sohail's discussion of plaintiff's "impairments, symptoms, and treatments" does not support such restrictive limitations. Tr. 1431. Again, the ALJ erred. As noted, Dr. Sohail's opinion was based on "objective findings, both radiological and clinical" and plaintiff's "history." Dr. Sohail described plaintiff's diagnoses of the thoracic and lumbar spine and idiopathic diffuse skeletal hyperostosis, which is a "hardening of the tendons and ligaments running through the thoracic spine," plaintiff's degenerative disc and joint disease at L4-5, MRI and CT scan results that show moderate to severe stenosis affecting the traversing right L5 nerve root due to disc protrusion at that level, multiple clinical findings confirming significant reduction in the thoracic range of motion, positive straight leg raising test findings, positive sacroiliac compression testing, and

Page 10 – OPINION AND ORDER

muscle spasms. Dr. Sohail described that plaintiff's pain "worsens with most any motion," and plaintiff's "history" included chart notes indicating that even a trip to the doctor would cause plaintiff to "pay the price and hurt for days after," Tr. 1735, "moderate exercise cause[d] a flare of pain for the entire day after," Tr. 1757, and some days he could not even make the bed. Tr. 1778. Thus, Dr. Sohail's discussion of plaintiff's "impairments, symptoms, and treatments" in fact supported the restrictive limitations she defined.

The ALJ also found that Dr. Sohail did not support these opinions with a physical examination, and "the only physical examination results he references are that the claimant 'presented with an antalgic gait, and decreased weightbearing on the right lower extremity,' which does not support the limitations he opines, because absent identification of the degree of decreased weightbearing, or additional limitations, a person with antalgic gait and decreased weightbearing on the right lower extremity can still reasonably be expected to be able to stand and walk for 6 hours with regular breaks, to climb ladders, ropes, or scaffolds, and to maintain adequate attendance at work." Tr. 1431. But that unreasonably focuses on only one aspect of Dr. Sohail's opinion, which otherwise describes the numerous objective tests that were performed.

Finally, the ALJ concluded that "Dr. Sohail.s opinions overstate the claimant's limitations in a manner inconsistent with medical evidence and other evidence discussed above with respect to the findings of Dr. Johnson and Dr. Ballard, which support that the claimant can perform light work with occasional bending." Tr. 1432. The ALJ stated, "Overall, I am more persuaded by Dr. Ballard." *Id.* But such a conclusion can only be made after a proper evaluation of Dr. Sohail's opinion, which the ALJ shall conduct on remand.

II.    **Subjective Symptom Testimony**

Page 11 – OPINION AND ORDER

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, available at 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Page 12 – OPINION AND ORDER

The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 1424. Specifically, the ALJ found:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because although the medical record supports that the claimant experiences persistent pain despite various treatment modalities, his treatment notes and physical examinations indicate that his pain and related physical limitations improved with treatment, and his statements about his walking and activities of daily living support that although his pain levels wax and wane, he is capable of standing, walking, and sitting for two hours at a time without experiencing debilitating pain.

Tr. 1424.

Regarding walking, the ALJ cited to instances where plaintiff reported that he had walked several miles at a time on various occasions. However, plaintiff described that he was "in so much pain afterwards" that he "just couldn't keep it up." Tr. 1449. In its previous 2023 decision, this court found that isolated instances of walking several miles, which were followed by increased pain, are insufficient to discredit plaintiff's testimony. *See B. v. Comm'r Social Security Admin.*, No. 3:21-cv-1303-AR, Opinion and Order (March 17, 2023) 8, ECF 17. The same is true again here.

As for activities of daily living, the ALJ observed that plaintiff "engages in activities of daily living requiring driving, walking, and sitting for extended periods, including driving to and attending church meetings twice a week that last close to 2 hours, driving 45 minutes to places and walking door-to-door to conduct church outreach, driving to bible study meetings that last 2-3 hours, and driving to and shopping at the grocery store for 1-2 hours." Tr. 1428. In its prior decision, this court observed that "[t]he ALJ did not find that plaintiff spent a 'substantial'

Page 13 – OPINION AND ORDER

portion of his day engaged in household chores or that these activities are transferrable to a work environment." *See B. v. Comm'r Social Security Admin.*, No. 3:21-cv-1303-AR, Opinion and Order (March 17, 2023) 6, ECF 17. This time, the ALJ found "there is no evidence that the claimant spends a substantial portion of each day engaged in such activities," but concluded plaintiff's "statements about those activities nonetheless indicate that he can walk and/or sit for up to about two hours at a time without experiencing the debilitating level of pain he gets from taking a 4-5 mile walk." Tr 1429. The ALJ also concluded "[t]his supports that the claimant can stand, walk, and sit for up to 8 hours a day with regular 15 minutes breaks in the morning and afternoon and a 30 minute break at lunch without experiencing a level of pain that exceeds what he has shown to be sufficiently manageable for him without 'overdoing it.'" Tr. 1431.

But plaintiff never represented that he did not suffer pain while engaged in those activities. In fact, plaintiff explained that he participated in church-related activities because he relied on his faith for strength and inspiration to get through his debilitating pain. *See* Tr. 105 (describing he helps others as an elder in his church and it "helps pain to do something for others"). Sometimes, plaintiff had to cancel his plans to engage in church-related activities because of the pain. Tr. 1451. Nonetheless, plaintiff's overall level of involvement was minimal: "at the most," plaintiff engaged in 10 to 15 hours of church work per week. Tr. 1452. Plaintiff also described that he did not actively engage in door-to-door activity like others could, but explained "we'll drive from Portland to Scappoose, which is . . . maybe 20 minutes, half hour," and he would "do one or two doors" or conduct a Bible study. Tr. 1452. And if plaintiff planned to attend an evening meeting, he could not do much of anything earlier that day. Tr. 1452. As noted, plaintiff has described baseline pain that "worsens with most any motion," Tr. 1860, and

Page 14 – OPINION AND ORDER

explained that he has lie down during the day; he cannot sit all day, and some days he is "just shot" because his pain level is up. Tr. 1453. He also described being unable to sleep at night due to the pain, and after two or three days, he crashed and slept for most of the day because he was exhausted. Tr. 1450. Thus, plaintiff's limited engagement in religious activities does not support the ALJ's conclusion that plaintiff "can stand, walk, and sit for up to 8 hours a day with regular 15 minutes breaks in the morning and afternoon and a 30 minute break at lunch." Tr. 1431.

Finally, regarding improvement with treatment, the ALJ concluded that, "[t]aken as a whole, the claimant's statements and physical examinations support that although his level of pain waxes and wanes, it is generally adequately managed with the treatments described above." Tr. 1429. The ALJ pointed to portions of plaintiff's function reports and his testimony where he reported some improvement to discredit his purported statement that "nothing has helped his pain." Tr. 1429. But there is nothing in the function reports that this court could find where plaintiff makes such a statement. Moreover, this statement mischaracterizes plaintiff's testimony. At his hearing, plaintiff testified that pain psychology was "helpful," but explained "nothing just seems to take it away," i.e., the pain, and "nothing seems to really help." Tr. 1447. That statement is distinguishable from a broader statement that "nothing has helped his pain." Thus, the ALJ erred in this regard as well.

## III.    Lay Witness Testimony

The ALJ observed that plaintiff's acquaintance of 20 years submitted a statement that described plaintiff's symptoms and limitations in a manner similar to plaintiff's reports. The ALJ rejected the lay witness statement as "inconsistent with the medical evidence for the same

reasons . . . with respect to the claimant's reports." Tr. 1432. For the same reasons the ALJ erred in discrediting plaintiff's testimony, the ALJ also erred in assessing the lay witness testimony.

## IV.    Credit-as-True Analysis

When the court determines the Commissioner erred in making a decision to deny benefits, the court has discretion to remand the matter for further proceedings or the immediate award of benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion."). The court may remand for the immediate award of benefits if certain prerequisites are met. *Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), *as amended* (Feb. 5, 2016). The court "must . . . review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (simplified) (citation omitted). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke*, 379 F.3d at 593.

If the court determines the record "has been fully developed . . . and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true." *Dominguez*, 808 F.3d at 407 (simplified) (quoting *Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014)). Even if these requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. The court will "generally remand for an

award of benefits only in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (simplified).

Here, there are still outstanding issues to be resolved, i.e., the ALJ should be given the opportunity apply the correct standard for evaluating Dr. Sohail's opinions, which were solicited after the case was previously remanded. Thus, this is not one of those rare circumstances where remand for benefits is appropriate.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings.

IT IS SO ORDERED.

DATED April 3, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge